IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIESHA SHORTER,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 20-765** |
| | : | |
| **PRINCETON RESOURCE ASSOCIATES, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**McHUGH, J.**                                                                                                    **JUNE 22, 2020**

<u>**MEMORANDUM**</u>

This is an action brought by a former student of a private educational institution that trains nurses, who alleges that her termination from the program for disciplinary reasons violated federal and state law. Specifically, Plaintiff Kiesha Shorter brings federal claims against Defendant Princeton Resource Associates, also referred to as PITC Institute ("PITC"), and several of its staff, under the Due Process Clause of the Fourteenth Amendment and Title IX, together with state law claims of breach of contract and intentional infliction of emotional distress.[1] Defendants have moved to dismiss Plaintiff's Complaint, contending that Plaintiff has failed to plead facts supporting essential elements of her claims. Defendants' motion will be granted in its entirety, but such dismissal is without prejudice in the event the deficits in the Complaint might be cured.

**I.  Relevant Background**

Plaintiff was a student enrolled in PITC's practical nursing program in January 2018, when the confrontation allegedly precipitating her expulsion occurred. Compl. ¶¶ 18, 22, ECF 1.

---

[1] Plaintiff has declined to pursue Count IV of her Complaint, for negligent infliction of emotional distress. Pl. Opp. at 7 n.5, ECF 6.

Plaintiff claims that during the summer of 2017, the fiancé of a fellow student, Sakiesha Moody, circulated a video of Ms. Moody and a third PITC student engaging in sexual activity to much of the PITC community via email. *Id.* ¶ 19. Plaintiff viewed but never saved the video. *Id.* ¶ 21. On January 18, 2018, Ms. Moody allegedly bumped into Plaintiff in a classroom, sparking a confrontation between them. *Id.* ¶ 22. Plaintiff also claims to have watched additional non-sexually explicit videos with other students and PITC instructor Jasmine Forte during a classroom break that day, which did not include the video depicting Ms. Moody. *Id.* ¶¶ 23-26.

Though Plaintiff contends that she did not disseminate the explicit video of Ms. Moody, the Complaint alleges that the PITC Defendants pressured Forte to falsely accuse Plaintiff of doing so. *Id.* ¶¶ 27-30. Plaintiff also avers that Forte subsequently retracted her accusation in writing and shared this retraction with the other Defendants.[2] *Id.* ¶ 31. Plaintiff further contends that Ms. Moody also lied about Plaintiff being the originator of the video, admitting later that she "had to say a name." *Id.* ¶ 33.

On February 12, 2018, Defendant Gary Guldin, Interim Practical Nursing Coordinator, called Plaintiff into a meeting and informed her she was being terminated from the school due to her misconduct, specifically her violating the school's sexual harassment policies against showing pornography. *Id.* ¶ 35. Plaintiff maintains that she received no advance warning of the charges, and that Guldin did not ask her for her version of events during the meeting. *Id.* ¶¶ 36, 38. Plaintiff also claims she had not been told that she was being investigated and was not provided an opportunity to call witnesses. *Id.* ¶¶ 39-40. The following day, Plaintiff avers she emailed Defendants Guldin and Naheed Ahmed, School Director of PITC, disagreeing with the termination, and on February 16, 2018, Guldin responded with a reaffirmation of PITC's

---

[2] Plaintiff has not attached this retraction to her Complaint or to her Response.

decision to terminate her and an invitation for Plaintiff to file an appeal.  *Id*. ¶¶ 42-43.  Plaintiff contends that she filed an appeal via email to Defendants on February 21, 2018, which received no response.  *Id.* ¶ 44.  Subsequent attempts by Plaintiff's counsel to reach Defendants were also allegedly left unanswered.  *Id.* ¶¶ 45-46.

## II.      Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.     Discussion

### A. Count I—Fourteenth Amendment Due Process Claim Fails

Plaintiff's Fourteenth Amendment Due Process claim fails because Plaintiff has not pled facts sufficient to establish that Defendants were operating under the color of state law for the purposes of 42 U.S.C. § 1983 liability.  In analyzing whether action was taken under the color of state law, courts determine whether the action may "be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  There are two prongs to the "fair attribution" test:  first, the conduct responsible for the alleged deprivation must have been "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id*.; *see also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting both prongs of *Lugar* test).

For the sake of argument, I will assume that the Defendant PITC satisfies the first element of the test established in *Lugar*.  It is an educational institution that must conform with a range of state and federal statutes and regulations in order to operate lawfully, and its Practical

Nursing has been licensed by the Pennsylvania State Board of Nursing.[3] Nonetheless, Defendants cannot reasonably be said to be state actors. In determining whether a party is a state actor under § 1983, the Third Circuit applies Fourteenth Amendment state action doctrine. *Leshko v. Servis*, 423 F.3d 337, 339 (3d. Cir 2005) ("We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment.").[4] The primary question guiding the inquiry is whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id*. (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). In attempting to answer the question, courts in the Third Circuit "attempt to align the case at hand with the Supreme Court case most factually akin to it." *Id*.

In *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the Supreme Court analyzed state action with respect to a private, nonprofit educational institution that specialized in aiding students that struggled in traditional public-school settings. Despite the fact that "virtually all of the school's income" was based on public funding, and that it was subject to extensive regulations generally, the Court was not persuaded that the school's decision to discharge employees implicated state action. *Id*. at 840-842. The Third Circuit found *Rendell-Baker* instructive in deciding an analogous state action question in *Robert S. v. Stetson School, Inc.*, 256 F.3d 159 (3d Cir. 2001), which also involved a private school that provided educational services to troubled youth. In *Stetson*, the Court similarly found that the school was not a state actor even though the plaintiff there was in its custody based on the decision of a state agency. *Id*. at 166-67. Here, the Plaintiff

---

[3] *See* PITC Institute "About Us" at http://pitc.edu/about-us.html.

[4] The defendants in *Leshko* were former foster parents to the plaintiff, and the foster care program is governed by Pennsylvania state law and regulations. *See* 55 Pa. Code §§ 3700 *et. seq*; 42 Pa. §§ 6301 *et. seq*. As such, the *Leshko* Court understandably focused on the second prong of *Lugar*'s fair attribution test, whether the parents were state actors for the purposes of § 1983 liability. The first prong of the *Lugar* test was easily satisfied.

has not pled any facts nearly as compelling as those in *Stetson* or *Rendell-Baker*, and accordingly I find that Plaintiff's Due Process claim must fail as it currently stands. However, I will grant Plaintiff's requested leave to amend her Complaint to allege facts that would shed further light on her contention that state action does indeed exist.

### B. Count II—Title IX Claim Fails

Plaintiff next alleges that Defendants violated Title IX under an "erroneous outcome" theory of liability. *See Doe v. The Trustees of the University of Pennsylvania*, 270 F. Supp. 3d 799, 822 (E.D. Pa. 2017). For purposes of analysis, the specific theory pursued by Plaintiff does not have controlling significance. The Third Circuit has recently held that there is "no need to superimpose doctrinal tests on the Title IX statute," noting that "all of these theories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student." *Doe v. University of the Sciences*, 2020 WL 2786840, at *4 (3d Cir. May 29, 2020) (internal brackets omitted) (citing *Doe v. Purdue University*, 928 F.3d 652, 667 (7th Cir. 2019)). Consequently, courts in this Circuit must now simply determine whether "the alleged facts, if true, raise a plausible inference that the university discriminated against the student 'on the basis of sex.'" *Id.* (internal brackets omitted) (citing *Purdue University*, 928 F.3d at 667-68). Other Courts have provided examples of the types of facts that might support such an inference, such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994); *Trustees of the University of Pennsylvania*, 270 F. Supp. 3d at 823; *Roe v. Pennsylvania State University*, 2019 WL 652527, at *10 (E.D. Pa. Feb. 15, 2019).

Plaintiff has not pled facts sufficient to create an inference that gender bias played a role in the decision to terminate her enrollment. In expelling Plaintiff, Defendants were protecting

the privacy and reputation of another female student.  Moreover, Plaintiff has not pled that male students accused in similar disciplinary circumstances have been dealt with by PITC administrators differently.  Given those baseline facts, it is difficult to see any logical nexus between gender and the action taken.  Plaintiff seemingly argues that Ms. Moody's alleged involvement in her termination, when coupled with her involvement of the expulsion of other students, may give rise to an inference of gender bias in PITC's handling of complaints.  But I cannot see how an inference of gender bias is supported solely based upon the involvement of one student in multiple proceedings.  It might suggest favoritism or undue influence with school administrators, but does not suggest gender bias.  Accordingly, Plaintiff's Title IX claim fails.

### C. Counts III and V—The Court Declines to Exercise Supplemental Jurisdiction

Because I have dismissed all of Plaintiff's federal law claims, I may decline to exercise supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).  Indeed, the Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).  This case is at an early stage and there is no affirmative justification for exercising supplemental jurisdiction over this matter. If therefore  Plaintiff fails to rescue her federal claims through an Amended Complaint, I will decline supplemental jurisdiction over her remaining state law claims leaving her to pursue them in the appropriate state court.

**IV.     Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss will be **GRANTED**.  All counts are dismissed without prejudice.  An appropriate Order follows.

s/Gerald Austin McHugh
United States District Judge
